FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 MAY -7 PM 4:02

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| KEITH CUMMINGS, ) | |
| ) | |
| Petitioner, ) | |
| ) | CV 112-124 |
| v. ) | (Formerly CR 110-107, CR 110-324 & |
| ) | CR 111-042) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Keith Cummings, an inmate confined to federal custody at FCI Coleman Low in Coleman, Florida, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.[1] (Doc. no. 2.) This case is now before the Court on Respondent's motion to dismiss Petitioner's § 2255 motion. (Doc. no. 6.) Petitioner opposed Respondent's motion to dismiss with a "Motion to Deny Government's Response on Waiver of Collateral Attack." (Doc. no. 9.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss be **GRANTED**, that Petitioner's

---

[1] Petitioner originally filed the instant motion as a "Motion for Re-Sentence Instanter." (See doc. no. 1.) In an Order issued on August 27, 2012, the Honorable J. Randal Hall, United States District Judge, noted that the filing attacked the validity of Petitioner's federal sentence such that it might be recharacterized as a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Doc. no. 3.) Consistent with the requirements of Castro v. United States, 540 U.S. 375, 377 (2003), Judge Hall informed Petitioner of his intent to recharacterize his filing as a § 2255 motion, and directed Petitioner to file a notice of whether he contested the recharacterization, whether he wanted to withdraw the filing, or whether he wanted to amend the filing by asserting any additional claims. (Id.) Petitioner then clarified that he wanted Judge Hall to construe his original filing as a § 2255 motion. (Doc. no. 4.)

"Motion to Deny Government's Response" be **DENIED**, that the instant § 2255 motion be **DISMISSED** without an evidentiary hearing, and that this civil action be **CLOSED**.

I. BACKGROUND

In 2010 and 2011, Petitioner was charged in three separate criminal cases in the Southern District of Georgia for violating various federal and state laws. First, on April 29, 2010, Petitioner was charged in a two-count information with (1) driving on a suspended or revoked license on the Fort Gordon Military Reservation, in violation of 18 U.S.C. §§ 7 and 13 and O.C.G.A. § 40-5-121(a), and (2) displaying a cancelled driver's license, in violation of 18 U.S.C. §§ 7 and 13 and O.C.G.A. § 40-5-120(1). United States v. Cummings, CR 110-107, doc. no. 1 (S.D. Ga. Apr. 29, 2010) (hereinafter "CR 110-107"). In the second case, a federal grand jury indicted Petitioner on November 4, 2010, with three counts in a six-count indictment involving multiple defendants: (1) Count One, conspiracy to commit fraud and related activity in connection with access devices, in violation of 18 U.S.C. §§ 371 and 1029(b)(2); (2) Count Two, fraudulent use of unauthorized access device, in violation of 18 U.S.C. § 1029(a)(2); and, (3) Count Five, aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). United States v. Cummings, CR 110-324, doc. no. 1 (S.D. Ga. Nov. 4, 2010) (hereinafter "CR 110-324"). Finally, Petitioner was charged in an information on February 14, 2011, with three counts of possession of counterfeit and forged securities, in violation of 18 U.S.C. § 513(a). United States v. Cummings, CR 111-042, doc. no. 1 (S.D. Ga. Feb. 14, 2011) (hereinafter "CR 111-042").

On February 28, 2011, a change of plea hearing was held in CR 110-324 after Petitioner entered into a written plea agreement. See CR 110-324, doc. no. 67. At that hearing, however, after the Court had reviewed the counts in the indictment and begun to discuss the plea

2

agreement, Petitioner announced through his attorney that he did not wish to plead guilty to Count One, and the hearing was terminated. Id. Thereafter, pursuant to another plea agreement, Petitioner elected to plead guilty to Count One in CR 110-107, Counts Two and Five in CR 110-324, and Counts One through Three in CR 111-042. See id., doc. no. 79.[2]

Petitioner's plea agreement included a broad appeal and collateral attack waiver provision that stated in relevant part:

> To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the conviction and sentence in any post-conviction proceeding, including a 28 U.S.C. § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum; and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court . . . .

Id. at 8. In addition, by signing the plea agreement, Petitioner attested that he had read and understood the plea agreement and that the plea agreement accurately set forth the terms and conditions of his agreement with the government. Id. at 15.

Judge Hall held a Rule 11 hearing on May 11, 2011. During that hearing, Judge Hall reviewed the counts in the indictment in CR 110-324, as well as those in the informations in CR 110-107 and 111-042. Id., doc. no. 118, pp. 5, 9-12 (transcript of Rule 11 hearing). Judge Hall then questioned Petitioner to determine whether he was competent to plead guilty. Id. at 13-15. When Judge Hall asked whether Petitioner was satisfied with the help he had received

---

[2]For ease of reference, in the remainder of the this Report and Recommendation, the Court will cite to the docket for CR 110-324 for documents that are entered in the dockets for all three of Petitioner's underlying criminal cases.

3

from his appointed counsel, Petitioner responded that he was.[3] Id. at 15.

Judge Hall next explained the rights that Petitioner would waive by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 15-18. Judge Hall reviewed the elements of the charges to which Petitioner was pleading guilty and explained that the government would have to prove those elements beyond a reasonable doubt at trial in order to obtain a conviction. Id. at 18-20. After having the elements read to him, Petitioner affirmed that he understood, and when Judge Hall asked him if his conduct would satisfy those elements, Petitioner answered, "Yes, sir." Id. at 20. Judge Hall then heard a government witness's presentation of a factual basis for the guilty pleas, the truth of which Petitioner affirmed. Id. at 20-27.

Petitioner further testified that he had reviewed the plea agreement with his attorney before he signed it, and that he understood that he was agreeing that whatever facts were contained in the agreement were true. Id. at 28. In addition, Judge Hall reviewed the appeal and collateral attack waiver with Petitioner, summarizing it as follows:

> [Y]ou've agreed by signing this plea agreement to waive your right to directly appeal your conviction and sentence and to collaterally attack your conviction and sentence in a post-conviction proceeding except in the case of a sentence that is higher than the law allows or is higher than the high end of the sentencing guideline range that is applicable to your case, in which event you would have the right to directly appeal that sentence.

Id. at 29-30. In response to a question from Judge Hall, Petitioner affirmed that he had agreed

---

[3]The dockets in all three of Petitioner's criminal cases indicate that Mr. Richard H. Goolsby and Mr. Richard Hays Goolsby, Jr., were both counsel of record. See CR 110-107; CR 110-324; CR 111-042. As Petitioner was only represented by Mr. Richard Hays Goolsby, Jr., at the Rule 11 hearing, however, Judge Hall asked questions generically about Petitioner's attorney. See, e.g., CR 110-324, doc. no. 118, p. 28 ("Did you discuss [the plea agreement] with your attorney and go over it with your attorney before you signed it?").

4

to the waiver as summarized by Judge Hall. Id. at 30.

Judge Hall then explained the maximum penalties for each of the counts to which Petitioner was pleading guilty, as well as the possibility that the Court could order Petitioner to provide notice to his victims and restitution, and Petitioner affirmed that he understood. Id. at 30-31. Judge Hall proceeded to explain to Petitioner that a probation officer would prepare a Presentence Investigation Report ("PSI") which Judge Hall would rely upon to determine Petitioner's sentence, as well as the applicability and advisory nature of the United States Sentencing Guidelines ("U.S.S.G."). Id. at 31-34. When asked if he understood, Petitioner answered, "Yes, sir." Id. at 34.

Petitioner also averred, in response to questions asked by Judge Hall, that no one had "promised, predicted, or made a prophesy that [he] would receive a specific sentence" or "forced" or "pressured" him to plead guilty. Id. at 34. Judge Hall then asked if Petitioner still wanted to plead guilty to Counts Two and Five of the indictment in CR 110-324, Count One of the information in CR 110-107, and Counts One, Two, and Three of the information in CR 111-042, to which Petitioner responded, "Yes, sir." Id. at 34-35. Judge Hall thus found that Petitioner was competent, that he fully understood the charges against him, and that his plea was "voluntary, knowing, and not the result of any force, pressure, threats, or promises," and he found Petitioner guilty of the offenses to which he was pleading. Id. at 36.

After the guilty plea hearing, the United States Probation Office prepared a PSI, which provided for a combined offense level of 24. PSI ¶¶ 32-38, 52. The offense level included the following enhancements: (1) a twelve-point enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(G) because the offense involved a loss amount of at least $200,000.00 but less than $400,000.00; (2) a four-point enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(C) because

5

the offense involved 50 or more victims; and, (3) a two-point enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. PSI ¶¶ 33, 34, 37.[4]

At Petitioner's sentencing hearing, which was held on November 17, 2011, Judge Hall found, consistent with the PSI, that Petitioner's total offense level was 24 and his criminal history category was IV, which resulted in a guideline range of 77 to 96 months imprisonment, one to three years of supervised release, $10,000.00 to $100,000.00 in fines, restitution in the amount of $178,327.93, and a special assessment of $525.00.[5] CR 110-324, doc. no. 119, p. 17 (transcript of sentencing hearing). After hearing argument on mitigation from Petitioner and his counsel, Judge Hall granted the government's motion for downward departure pursuant to U.S.S.G. § 5K1.1, and sentenced Petitioner to 82 months' imprisonment, to pay restitution in the amount of $178,327.93, to pay a fine of $1000.00 for the offenses in CR 110-107, to pay a special assessment of $525.00, and to a three-year term of supervised release. Id. at 23-24. Judge Hall also reiterated that Petitioner had waived the right to appeal or to attack the sentence in any post conviction proceeding. Id. at 27. Petitioner did not appeal.

Petitioner then timely filed the instant § 2255 motion. In the motion, Petitioner raises four grounds for relief: (1) he is actually innocent of the aggravated identity theft conviction under Count Five of the indictment in CR 110-324; (2) the sentencing court erred in imposing

---

[4]Petitioner objected to allegations in the PSI that he taught his credit card numbering scheme to one of his co-defendants, Shantay Monique Thomas. PSI ¶¶ 14, 33, 34, Addendum. Petitioner also objected to the amount of loss calculation, which included losses caused by Ms. Thomas, and the obstruction of justice enhancement. Id., Addendum.

[5]Judge Hall heard from counsel for Petitioner and the government on Petitioner's objections to the PSI. CR 110-324, doc. no. 119, pp. 4-13. After hearing argument, Judge Hall overruled Petitioner's objections and adopted the factual statements, conclusions, and guideline applications as set forth in the PSI. Id. at 13-17.

6

an obstruction of justice enhancement; (3) counsel rendered ineffective assistance by failing (a) to "raise the applicability" of Flores-Figueroa v. United States, 556 U.S. 646 (2009) to Petitioner's case; (b) to object to the obstruction of justice enhancement; and, (c) to negotiate a more favorable plea agreement; and, (4) his guilty plea was not knowing and voluntary. (Doc. no. 2, pp. 1-3.) Petitioner also requests an evidentiary hearing. (Id. at 3.) In its motion to dismiss, Respondent contends that Petitioner's § 2255 motion should be dismissed because his claims are either barred by the collateral attack waiver in his plea agreement or otherwise lack merit. (See doc. no. 6, pp. 9-16.) Petitioner filed a "Motion to Deny Government's Response on Waiver of Collateral Attack" in opposition to the motion to dismiss. (Doc. no. 9.) The Court resolves the matter as follows.

## II. DISCUSSION

### A. No Need for Evidentiary Hearing

Petitioner requests an evidentiary hearing in his § 2255 motion. (Doc. no. 2, p. 3.) In regard to that request, the Eleventh Circuit follows the general rule "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way, "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts only conclusory allegations.

7

Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004); see also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (noting that petitioner is not entitled to an evidentiary hearing if his claims "are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible").

As described in detail below, the Court finds that Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case. Accordingly, Petitioner's request for an evidentiary hearing should be denied.

### B. Effect Of Collateral Attack Waiver In The Plea Agreement

It is well settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993).[6] "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. Thus, if the government meets this burden in the instant case, then the appeal and collateral attack waiver provisions of Petitioner's plea agreement are enforceable. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (*per curiam*) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999);

---

[6]Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See Bushert, 997 F.2d at 1345; see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365-67 (N.D. Ga. 2004).

8

United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has met its burden in demonstrating the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to collaterally attack his conviction and sentence "in any post-conviction proceeding, including a § 2255 proceeding." CR 110-324, doc. no. 79, p. 8. Moreover, Judge Hall thoroughly reviewed the terms of the plea agreement during the plea colloquy, with particular emphasis on the significance of the appeal and collateral attack waiver provision. Id., doc. no. 118, pp. 29-30. After Judge Hall concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained by Judge Hall. Id. at 30.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court therefore demonstrates that the collateral attack waiver was knowing and voluntary. Thus, the Court concludes that the collateral attack waiver is valid. Of course, the Court is aware that Petitioner has also challenged the assistance of counsel in entering into the plea agreement and the validity of his guilty plea, claims which, if found to have merit, would cast doubt on whether Petitioner validly waived his right to collaterally attack his sentence. However, as discussed infra, the Court determines that these claims lack merit, thus supporting the conclusion that Petitioner validly waived his right to a collateral post-conviction attack of his conviction and sentence.

Thus, Petitioner's claims in Grounds One (that he is actually innocent of aggravated identity theft) and Two (that the sentencing court erred in imposing an obstruction of justice

9

enhancement) are barred by his collateral attack waiver.[7] Moreover, "[a]n ineffective assistance of counsel argument survives a waiver of appeal [or collateral attack] only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). Applying this principle, the Eleventh Circuit concluded in Williams that the petitioner's ineffective assistance of counsel claims concerning his counsel's representation at sentencing were covered by the collateral attack waiver in the plea agreement, as the claims "[did] not concern representation relating to the validity of the plea or waiver." See id. Therefore, Petitioner's claim in subsection (b) of Ground Three that counsel was ineffective for failing to object to the obstruction of justice enhancement to Petitioner's sentence – i.e., that counsel was ineffective at sentencing – is also barred from review.

### C. Remaining Claims in Grounds Three and Four Not Barred, but Lack Merit

Notwithstanding the above analysis, some claims, including those of ineffective assistance of counsel, can survive a valid collateral attack waiver. In particular, the Eleventh Circuit recognizes that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams, 396 F.3d at 1342; see also

---

[7]As the government observes, even if Petitioner's actual innocence claim were not barred by the waiver, he would not be entitled to relief because neither the Supreme Court nor the Eleventh Circuit has definitively recognized actual innocence as a freestanding ground for habeas corpus relief, particularly in a non-capital case. See Herrera v. Collins, 506 U.S. 390, 417 (1993) (assuming without deciding that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief . . . ."); Jordan v. Sec'y, Dep't of Corrs., 485 F.3d 1351, 1356 (11th Cir. 2007) ("For what it is worth, our precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases.").

Vaca-Ortiz, 320 F. Supp. 2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). This is so because ineffective assistance of counsel in entering the plea "would require a finding that the plea was not entered knowingly and voluntarily, which would in turn mean that a court could not enforce a waiver contained within that plea agreement." Vaca-Ortiz, 320 F. Supp. 2d at 1365.

Petitioner's claims in subsections (a) and (c) of Ground Three – that counsel was ineffective for failing to raise the applicability of Flores-Figueroa and negotiate a more favorable plea agreement – purport to challenge his counsel's performance as it relates to the validity of his plea, while his claim in Ground Four purports to challenge the knowing and voluntary nature of the plea itself. (See doc. no. 2, pp. 1-3.) Accordingly, these claims are not barred by the provision in the plea agreement waiving Petitioner's right to collaterally attack his sentence.

### 1. Ineffective Assistance of Counsel Claims in subsections (a) and (c) of Ground Three Lack Merit

That having been said, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989)

11

(emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head,

12

261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Petitioner first contends in subsection (a) of Ground Three that counsel was ineffective for failing to "raise the applicability" of Flores-Figueroa to Petitioner's case.[8] (Doc. no. 2, p. 1.) Petitioner's claim here, which is closely related to his claim of actual innocence in Ground One, is based on the Supreme Court's holding in Flores-Figueroa, 556 U.S. at 657, that, in order to obtain a conviction under 18 U.S.C. § 1028A(a)(1), the government must prove "that the defendant knew that the means of identification at issue belonged to another person." Petitioner appears to contend that because of Flores-Figueroa, he could not be convicted of aggravated identity theft because he "didn't have any knowledge or where about of the existing individual that was specified," or, in other words, because he did not know the *particular* people whose credit card numbers he was using. (Doc. no. 9, p. 2.) Petitioner misreads § 1028A(a)(1) and Flores-Figueroa, however. A conviction for aggravated identity theft "requires proof only that the defendant knew that the victim was a real person, not that the defendant knew the victim personally." Smith v. United States, 1:12-CV-868-WSD-AJB, 2012 WL 7800836, at *6 (N.D.

---

[8]While not entirely clear, Petitioner asserts that counsel was ineffective for failing to "properly represent [him] at the critical stages of the proceeding" with respect to Flores-Figueroa, (doc. no. 2, p. 1), and for failing to recognize that the aggravated identity theft count in Petitioner's indictment in CR 110-324 was "invalid," (doc. no. 9, p. 2). Accordingly, it appears that Petitioner is challenging counsel's performance as it relates to the advice regarding Petitioner's decision to plead guilty. Any other claim of ineffective assistance of counsel in this regard that does not relate to the validity of the plea would of course be barred by Petitioner's valid collateral attack waiver. See supra Part II.B.

13

Ga. Nov. 20, 2012), *adopted by* 2013 WL 1189490 (N.D. Ga. Mar. 21, 2013).

Here, Petitioner admitted at the Rule 11 hearing that he "knowingly possessed . . . a means of identification of another person." CR 110-324, doc. no. 118, pp. 19-20. Petitioner also affirmed at the Rule 11 hearing that he "checked" the credit card numbers he used "to make sure these were, in fact, accounts that an individual held" and that he "provided a fraudulently-obtained credit card number, a number that didn't belong to him but was associated with a specific individual," to a furniture store to buy a television on April 13, 2009. Id. at 23-24, 27. Indeed, Petitioner does not even dispute that he knew the credit card numbers he was using belonged to *someone*,[9] which is all that § 1028A(a)(1) requires, as interpreted by Flores-Figueroa. Accordingly, Flores-Figueroa offered no help to Petitioner, and he thus cannot show that he was prejudiced by counsel's failure to "raise the applicability" of the case.[10]

Petitioner also contends in subsection (c) of Ground Three that counsel was ineffective for failing to negotiate a more favorable plea agreement. (Doc. no. 2, pp. 2-3.) The only specific allegation Petitioner offers to support this vague assertion, however, is that there should have been a stipulation in the plea agreement that Petitioner only caused a loss amount of $1,603.93.[11] (Id. at 2.) Plea agreements and their terms are a matter of prosecutorial discretion,

---

[9]Moreover, any such assertion would be unavailing because, as noted earlier, Petitioner's "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74.

[10]Accordingly, while Petitioner's actual innocence claim in Ground One is barred by his collateral attack waiver and fails to state a freestanding claim for habeas relief, it also simply lacks merit because, like the ineffective assistance claim discussed above, it is based on Petitioner's misreading of Flores-Figueroa. (See doc. no. 2, pp. 1-2; doc. no. 9, p. 2.)

[11]As noted earlier, Petitioner's sentence was enhanced twelve points pursuant to U.S.S.G. § 2B1.1(b)(1)(G) because he was ultimately held accountable for the total losses

14

however, and the government is not required to accept any plea deal offered by a defendant. See United States v. Palmer, 809 F.2d 1504, 1508 (11th Cir. 1987). A petitioner thus fails to establish that he was prejudiced by counsel's failure to negotiate a more favorable plea agreement with nothing more than the bald assertion that such an agreement might have been possible. See Guyadeen v. United States, 304CV1143J32MCR, 2006 WL 1360894, at *2-3 (M.D. Fla. May 17, 2006) (finding no prejudice because, "even assuming [petitioner's] counsel should have proffered that substitute conditions be included in the plea agreement, there is no evidence that the government would have acquiesced."); Freeman v. United States, 1:06-CR-0185-TWT-JFK, 2011 WL 2680494, at *5 (N.D. Ga. June 10, 2011), *adopted sub nom by* United States v. Warner-Freeman, 2011 WL 2680509 (N.D. Ga. July 7, 2011) ("All [m]ovant shows is that [he] would have preferred a more favorable plea agreement—such a showing could be made by almost anyone who has entered into a guilty plea."). Accordingly, Petitioner fails to show that he was prejudiced here because his assertion that counsel could have obtained a more favorable plea agreement is wholly speculative.

Therefore, Petitioner has failed to show that he was prejudiced with respect to either of his claims of ineffective assistance of counsel in subsections (a) and (c) of Ground Three. See Strickland, 466 U.S. at 687; Hill, 474 U.S. at 59. Thus, Petitioner is not entitled to relief on either of these claims of ineffective assistance of counsel.

---

caused as a result of the relevant conduct of his co-defendants, including Shantay Thomas, as well as his own conduct. See PSI ¶¶ 15, 18, 33; CR 110-324, doc. no. 119, pp. 13-14. Petitioner asserts in his § 2255 motion that it was only "foreseeable" that he was responsible for $1,603.93 in losses (see doc. no. 9, p. 4), which was the cost of the television he purchased from a furniture store in Louisville, Georgia using someone else's credit card number, see PSI ¶ 18, and that counsel should have stipulated to that amount in the plea agreement.

### 2. Petitioner's Claim in Ground Four that his Guilty Plea Was Not Knowing and Voluntary Lacks Merit

Having resolved Petitioner's claims of ineffective assistance of counsel before entry of the plea, the Court will address Petitioner's claim that his guilty plea was not knowing and voluntary. (See doc. no. 2, p. 1.) Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:
>
>> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The

Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Here, the extensive plea colloquy conducted by Judge Hall addressed each of the aforementioned "core principles." Moriarty, 429 F.3d at 1019. Judge Hall conducted questioning to determine that Petitioner was competent to plead guilty. CR 110-324, doc. no. 118, pp. 13-15. Judge Hall explained the rights that Petitioner would waive by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 15-18. Petitioner then testified that he had reviewed the plea agreement with his attorney before he signed it, and that he understood that he was agreeing that whatever facts were contained in the agreement were true. Id. at 28. Judge Hall outlined the minimum and maximum penalties that might be imposed in the event of conviction, and Petitioner affirmed that he understood. Id. at 30-31. Petitioner also averred, in response to questions asked by Judge Hall, that no one had "promised, predicted, or made a prophesy that [he] would receive a specific sentence," or "forced" or "pressured" him to plead guilty. Id. at 34.

In short, Judge Hall's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charge to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. The record

17

is therefore clear as to the intelligent and voluntary entry of Petitioner's guilty plea, and, as explained in greater detail supra, Petitioner fails to show otherwise by asserting that his counsel failed to raise the applicability of Flores-Figueroa to his case and to obtain a "more favorable" plea agreement. See Part II.C.1. As Respondent persuasively argues, Petitioner's allegations do not undermine the "core principles" ensuring the knowing and voluntary nature of his guilty plea.[12] (See doc. no. 6, pp. 14-15.)

Furthermore, while Petitioner contends that he is actually innocent of the aggravated identity theft charge, the Court has noted supra that this claim is premised on an erroneous legal assertion and lacks merit. See note 10. Petitioner thus falls well short of establishing a reasonable probability that he would not have pled guilty with the allegations in his § 2255 motion. See Moriarty, 429 F.3d at 1020. Accordingly, the Court finds that Petitioner's guilty

---

[12]Petitioner also appears to contend that the plea agreement he ultimately entered into charged him with the "relevant conduct of his so-called co-conspirators." (Doc. no. 9, p. 3.) Petitioner makes the related assertion that his second plea agreement was thus no different than his first (in which he agreed to plead guilty to the conspiracy count) because he was ultimately held accountable for the conduct of his co-defendants in his sentence. (See id.) To the extent Petitioner is attempting to claim that his guilty plea was not knowing and voluntary because of the sentence he received, that claim misses the mark.

Simply put, Petitioner did not *plead guilty* to the "relevant conduct" of his co-defendants, only to the counts charged in the indictment and informations in his three cases. While Petitioner's sentence was enhanced based on the relevant conduct of his co-defendants, there is no requirement that a defendant be informed of specific enhancements to his sentence for his guilty plea to be knowing and voluntary, so long as he is informed of the statutory penalties he faces as a result of pleading guilty and the applicability and advisory nature of the sentencing guidelines, which Petitioner was. See United States v. Herrington, 350 F. App'x 363, 369 (11th Cir. 2009) (*per curiam*) (where court informed defendant of potential for 50 years' imprisonment if he pled guilty to two counts of indictment, and that counsel's advice about possible sentence was not binding on the court, failure to inform him of potential for career-offender enhancement did not establish that his guilty plea was not knowing and voluntary); United States v. Hernandez, 356 F. App'x 279, 282 (11th Cir. 2009) (*per curiam*) (magistrate judge complied with Rule 11 with respect to consequences of plea by informing defendant of statutory penalties, applicability of sentencing guidelines, and fact that district court could deviate from guidelines in imposing sentence).

plea was entered knowingly and voluntarily.

In sum, Petitioner is not entitled to relief on any of the four grounds asserted in his § 2255 motion.[13] Respondent's motion to dismiss the § 2255 motion in its entirety should therefore be granted.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** (doc. no. 6), that Petitioner's "Motion to Deny Government's Response" be **DENIED** (doc. no. 9), that the instant § 2255 motion be **DISMISSED** without an evidentiary hearing, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED on this 14th day of May, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[13]Petitioner also attempts to raise a new ground for relief concerning the amount of loss calculation in his "Motion to Deny Government's Response." (See doc. no. 9, pp. 3-4.) Petitioner asserts that the sentencing court erred under Southern Union Co. v. United States, 132 S.Ct. 2344 (2012), by enhancing his sentence twelve points for his offense causing a loss between $200,000.00 and $400,000.00 without having the facts related to that enhancement found by a jury. (See doc. no. 9, pp. 3-4.) Notably, however, Southern Union Co. concerned the imposition of fines, not sentence enhancements. See 132 S.Ct at 2348-49. Even if the case applied, however, challenges to fines or restitution orders, which do not attack the lawfulness of a petitioner's custody, are not cognizable in a § 2255 motion. See Mamone v. United States, 559 F.3d 1209, 1211 (11th Cir. 2009) (per curiam); United States v. Segler, 37 F.3d 1131, 1137 (5th Cir. 1994). Moreover, any claim concerning an error in Petitioner's sentence would be barred by his valid collateral attack waiver, as Petitioner's sentence did not exceed the statutory maximum or the guideline range as found by the sentencing court. See supra Part II.B; CR 110-324, doc. no. 79, p. 8; doc. no. 119, p. 17. For all of these reasons, Petitioner is entitled to no relief on his belated Southern Union Co. claim.

19